# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOSEPH MOCSARY                                     CIVIL ACTION

VERSUS

JASON ARD, SHERIFF OF LIVINGSTON                   NO. 17-1713-SDD-EWD
PARISH, ET AL

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] by Defendant, Sheriff

Jason Ard, Sheriff of Livingston Parish ("Sheriff Ard") and the *Motion to Dismiss*[2] by

Defendants, Warden Perry Rushing ("Warden Rushing"), Warden of Livingston Parish

Detention Center, Deputy Eric Lockhart ("Lockhart"), Deputy Jacob McKnight

("McKnight"), and Deputy Trey Roberts ("Roberts")(or collectively "Defendants"), of the

Livingston Parish Sheriff's Office ("LPSO").  Plaintiff, Joseph Mocsary ("Plaintiff"), has

filed *Oppositions*[3] to these motions, to which Defendants filed *Replies.*[4]

## I.      FACTUAL BACKGROUND[5]

Plaintiff filed this lawsuit on November 30, 2017 asserting claims under 42 U.S.C.

§ 1983 and Louisiana law.[6]  Specifically, Plaintiff alleges that, on December 1, 2016,

Plaintiff was in the custody of the Livingston Parish Detention Center ("LPDC") and was

being transported from McKnight's vehicle to the booking area of the prison.[7]  Due to his

---

[1] Rec. Doc. 14.
[2] Rec. Doc. 15.
[3] Rec. Docs. 22 & 30, respectively.
[4] Rec. Docs. 28 & 29, respectively.
[5] The facts are drawn from the *Complaint* (Rec. Doc. 1) and the Parties' memoranda.
[6] Rec. Doc. 1.
[7] *Id.* at ¶ 15.
47915

admitted intoxication, Plaintiff was having a difficult time getting out of the vehicle.[8]  As a result, Plaintiff alleges McKnight and Lockhart "forcibly and aggressively removed Plaintiff from the vehicle, dragging him out face down with his arms handcuffed behind his back into the building's booking area."[9]  Plaintiff alleges that he cried out in pain numerous times to alert the deputies to his distress as he was experiencing unbearable agony in both shoulders, but he was ignored.[10]  Plaintiff contends his cries were interpreted as hostility, and he was thrown to the floor.[11]  At that point, Plaintiff stood up and angrily cried out, "They will pay for what they did to me."[12]

Later that same day, Plaintiff alleges that, while still intoxicated, he began to "jokingly" splash water from the sink in the decontamination room at a deputy.[13]  In response, the unidentified deputy tazed Plaintiff causing him to fall and hit his head on a sink which caused injury to his right eye.[14]  Plaintiff alleges the deputy said, "Look what you made me do."[15]

Following these events, Plaintiff alleges he suffered extreme pain to his head, shoulders, and lower abdomen.[16]  He was transported to Lallie Kemp Medical Center ("LKMC") where he received four stiches in his right eye but complains that his shoulder injury was not addressed.[17]  Following discharge, Plaintiff claims he was returned to

---

[8] *Id.* at ¶ 16.
[9] *Id.*
[10] *Id.* at ¶ 17.
[11] *Id.*
[12] *Id.*
[13] *Id.* at ¶ 18.
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 19.
[17] *Id.* Despite this allegation, Plaintiff does not allege a cause of action for medical indifference.

47915

LPDC and placed in isolation.[18]

Plaintiff claims that, on December 5, 2016, numerous deputies observed his severely bruised neck, arms, and shoulders following a shower.[19]  Thus, Plaintiff alleges he was seen by Dr. Wyler at LPDC on December 12, 2016 and was "finally granted additional medical treatment" at LKMC; however, during the treatment, Plaintiff alleges that the LPSO "interfered in the evaluation process" by not allowing Plaintiff to discuss the outcome of initial x-rays with the technician.[20]

On February 21, 2017, Plaintiff alleges he was transported to University Hospital where an orthopedic surgeon diagnosed him with a broken shoulder and ordered an MRI.[21]  Plaintiff alleges that he underwent the MRI approximately six weeks later, and the MRI offered a limited diagnosis of four major tears and a rupture.[22]

Subsequent to his treatment at University Hospital, Plaintiff alleges he continued to suffer with pain and discomfort but was never given any pain medication except an excess of ibuprofen, which he claims caused him additional health problems.[23]  Plaintiff alleges he was never offered a sling or any other support for his shoulder.[24]

## II.    CLAIMS

Although the *Complaint* is not a model of clarity, Plaintiff appears to bring federal claims pursuant to 42 U.S.C. § 1983 against all Defendants in both their individual and official capacities.   Plaintiff contends each of the Defendants violated his due process

---

[18] *Id.*
[19] *Id.* at ¶ 20.
[20] *Id.* at ¶ 20.
[21] *Id.* at ¶ 21. He further alleges that two unidentified deputies were present during the diagnosis including Deputy Raymond from Maripas [sic].
[22] *Id.*
[23] *Id.* at ¶ 22.
[24] *Id.*

47915

rights under the Fourteenth Amendment and subjected him to "unconstitutional punishment" and cruel and unusual punishment purportedly in violation of the Eighth Amendment. In his "Preliminary Statement," Plaintiff contends the Defendants demonstrated "deliberate indifference" to his safety and security in violation of his Eighth and Fourteenth Amendment rights.[25] Plaintiff's only reference to the Fourth Amendment is in his statement of Jurisdiction wherein he states that "this action is brought pursuant to 42 U.S.C. § 1983 and 1988 and the fourth … amendments to the Constitution of the United States."[26] Although Plaintiff does plead facts consistent with a claim of Fourth Amendment excessive force, the phrase "excessive force" appears nowhere in the *Complaint*.

It is also unclear whether Plaintiff has asserted a claim of deliberate medical indifference under the Eighth Amendment. As will be set forth below, Plaintiff pleads facts that are consistent with such a claim, but this claim is never set forth with specificity or clarity. Because the Court must consider this motion in the light most favorable to Plaintiff, and the Court must accept Plaintiffs' factual allegations as true at the Rule 12(b)(6) stage, the Court will assume for purposes of these motions that Plaintiff has stated a claim for Fourth Amendment excessive force and Eighth Amendment cruel and unusual punishment in the form of deliberate medical indifference.

Plaintiff brings Section 1983 claims against Sheriff Ard alleging that he tolerated institutionalized practices and ratified the misconduct of his officers by failing to properly supervise, train, discipline, and control his employees; by failing to take adequate

---

[25] *Id.* at ¶ 1.
[26] *Id.* at ¶ 2.
47915

precautions in hiring, promoting, and retaining personnel; by failing to establish a system to address police misconduct and deliberate indifference; by ratifying a policy of improperly investigating complaints of misconduct; and by failing to train and supervise his employees.[27]  Plaintiff further alleges that Sheriff Ard violated his Fifth Amendment rights.[28]

Plaintiff alleges that all Defendants violated his rights under the constitution and laws of the State of Louisiana.[29]  Specifically, Plaintiff alleges that all Defendants are liable for the state law claims of intentional infliction of emotional distress ("IIED"), failure to protect, and negligent supervision.[30]

All Defendants have moved to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.   LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[31]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[32]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state

---

[27] *Id.* at ¶ 25.
[28] *Id.* at ¶ 33.
[29] *Id.* at ¶ 34.
[30] *Id.* at ¶ 37.
[31] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[32] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
47915

a claim to relief that is plausible on its face.'"[33]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[34]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[35]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[37]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[38]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[39]

### B.  Federal Claims under 42 U.S.C. § 1983

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for

---

[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[34] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[36] *Twombly*, 550 U.S. at 570.

[37] *Iqbal*, 556 U.S. at 678.

[38] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[39] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

47915

redressing the violation of federal law by those acting under color of state law.[40] It

provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State ... subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured....[41]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method

for vindicating federal rights conferred elsewhere.'"[42]

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting

under the color of state law deprived him of a right secured by the Constitution or laws of

the United States.[43]   A Section 1983 complainant must support his claim with specific

facts demonstrating a constitutional deprivation and may not simply rely on conclusory

allegations.[44]

### C.  Sheriff Ard's *Motion to Dismiss* - Federal Claims

<u>Allegations Against Sheriff Ard</u>

Plaintiff's *Complaint* alleges as follows against Sheriff Ard:

> On information and belief, the abuse to which complainant was subjected
> was consistent with an institutionalized practice of the Livingston Parish
> Detention Center, which was known to and ratified by defendant Sheriff Ard

---

[40] *See Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[41] 42 U.S.C. § 1983.
[42] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).
[43] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984).
[44] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986).
47915

and Warden Doe,[45] the defendants having at no time taken any effective action to prevent persons in their custody and police personnel form continuing to engage in such misconduct.[46]

On information and belief, defendant Sheriff Ard and the Livingston Parish Detention Center authorized, tolerated as institutionalized practices, and ratified the misconduct hereinbefore detailed by:

(a) Failing to properly discipline, restrict, and control employees, including defendant deputies, known to be irresponsible in their dealings with protection of inmates;
(b) Failing to take adequate precautions in the hiring, promotion, and retention of deputy personnel, including the defendants herein;
(c) Failing to establish and/or assure the functioning of a bona fide and meaningful department system for dealing with complaints of police misconduct, but instead responding to such complaints with bureaucratic power and official denials calculated to mislead the public.[47]

\*\*\*

The hereinabove described actions and omissions, engaged in under color of state authority by defendants Sheriff Ard and the Livingston Parish Sheriff's Office, sued as a person, responsible because of its authorization, condonation, and ratification thereof for the acts of its agents, deprived the complainant of rights secured by him by the Constitution of the United States, including, but not limited to, intentional infliction of emotional distress, failure to protect, and negligent supervision, in addition to his Fifth and Fourteenth amendment rights to due process of law and his Eighth amendment rights to be free from cruel and unusual punishment.[48]

\*\*\*

It was the policy and/or custom of Sheriff Ard and the Livingston Parish Sheriff's Office to inadequately and improperly investigate complaints of misconduct and Sheriff Ard and the Livingston Parish Sheriff's Office instead tolerated acts of misconduct.[49]

<u>Sheriff Ard - Official Capacity Claims</u>

Sheriff Ard moves to dismiss the Section 1983 claims brought against him in his

---

[45] Warden Doe remains unidentified and is not listed as a Defendant in Plaintiff's *Complaint*.
[46] Rec. Doc. No. 1 at 6.
[47] *Id.* at 6-7.
[48] *Id.* at 8.
[49] *Id.* at 9.
47915

official capacity.  A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[50] Accordingly, the claims against the Sheriff in his official capacity are, in effect, claims against the municipal entity he represents, which is Livingston Parish.[51]  A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[52]  To establish an "official policy," a plaintiff must allege either of the following:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[53]

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[54] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[55]  A municipality cannot be held liable under Section 1983 for the

---

[50] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[51] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) *and affirmed*, 675 F.3d 454 (5th Cir. 2012).
[52] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
[53] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
[54] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[55] *Id.*
47915

tortious behavior of its employees under a theory of *respondeat superior*.[56] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[57]

The Supreme Court has held that municipal policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to Section 1983 liability.[58] The Fifth Circuit has held that an official is liable under Section 1983 for a failure to train or supervise only where a plaintiff establishes that: "(1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[59] A complaint must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."[60] To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[61]

In this case, Plaintiff has failed to plead any facts sufficient to state an official capacity claim against Sheriff Ard. Primarily, Plaintiff pleads only conclusions of law rather than facts. Further, Plaintiff fails to plead the existence of any *specific* policy or custom, fails to plead that Sheriff Ard adopted or promulgated such a policy or custom,

---

[56] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[57] *Id.*
[58] *See City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410–11, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[59] *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (alteration omitted) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).
[60] *Brown*, 520 U.S. at 404.
[61] *McClure v. Biesenbach*, No. 08–50854, 2009 WL 4666485, at *2 (5th Cir. Dec.9, 2008) (unpublished) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir.1997)).
47915

or that such policy or custom was widespread. The *Complaint* simply asserts, in conclusory fashion, that "the abuse to which complainant was subjected was consistent with an institutionalized practice of LPSO and the LPDC, which was known to and ratified by Sheriff Ard[.]"[62] There are likewise no specific factual allegations to support a claim that the alleged failures on the part of Sheriff Ard were causally connected to the alleged constitutional violations suffered or were deliberately indifferent to the plaintiff's constitutional rights. It is not enough to recite these words in a complaint; rather, Plaintiff is required to provide specific factual support for these allegations and a basis of proof for which Plaintiff claims to have such knowledge.

Similar claims were brought against Sheriff Ard in this Court in *Norton v. Livingston Parish Detention Center*, and the Court addressed those boiler-plate, conclusory, formulaic recitations the same way: "There are no factual allegations as to what this alleged policy was or what it involved. … Again, there is no factual allegation as to what these policies and procedures were, and whether or not they constituted an 'official policy' so as to hold Defendant Ard liable in his official capacity."[63]

Here, Plaintiff has not asserted any factual allegation of a pattern or widespread, repeated history involving Sheriff Ard and the type of "abuse" Plaintiff claims he suffered, both with respect to the alleged aggressive "punishment" at the hands of the deputies and the alleged lack of medical care he received. Plaintiff cites jurisprudence that isolated incidents can, in certain circumstances, constitute a policy for which a municipality may

---

[62] Rec. Doc. No. 1 at 6.
[63] *Norton v. Livingston Par. Detention Ctr.*, No. 13-437-JJB-SCR, 2013 WL 5519400, at *5 (M.D. La. Oct. 2, 2013) *order clarified on other grounds* No. 13-437-JJB-SCR, 2014 WL 1057218 (M.D. La. Mar. 19, 2014). 47915

be liable.  Plaintiff's reliance on this exception is misplaced.[64]

The Fifth Circuit has "consistently held ... that '[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy.'"[65] This is because "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy."[66]  However, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which [a municipality] may be liable."[67] Even so, "[t]he single incident exception is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand."[68]

This Court has previously addressed the narrow single incident exception from *Brown* as follows:

> In *Brown*, the Fifth Circuit found the single incident exception to apply when there was an **utter failure** to train and supervise. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), that the single incident exception applied in *Brown* because the county in that case "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a complete failure to train as in [*Brown*] and a failure to train in one limited area."[69]

---

[64] The efforts by Plaintiff to analogize his case to *Brown v. Bryan County* suggests to the Court that Plaintiff has no factual basis to allege a widespread pattern or practice and, therefore, must rely heavily on the single incident exception.  This would, however, necessarily require Plaintiff to offer a factual basis or proof that the Defendant deputies herein have the same or similar disturbing criminal histories and/or violent backgrounds as did the deputy in *Brown*, and that they also became officers and engaged in this conduct around the age of 21.  These facts played a significant role in the creation of this single incident exception, and Plaintiff herein has offered no factual basis upon which the Court could find that similar facts exist in this case.

[65] *Mathews v. Bowie Cty., Tex.*, 600 Fed.Appx. 933, 934 (5th Cir. 2015)(citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992)).

[66] *Fraire*, 957 F.2d at 1278 (5th Cir. 1992) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir.1984), *cert. denied*, 472 U.S. 1016 (1985)).

[67] *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000).

[68] *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

[69] *Bibbins v. City of Baton Rouge,* 489 F. Supp. 2d 562, 584 (M.D. La. 2007)(emphasis added).

47915

In the present case, Plaintiff referenced the single incident exception; however, there is no allegation in the *Complaint* that would suggest this very narrow exception applies. Plaintiff alleged no facts with respect to any deputies involved that would suggest youth, inexperience, a known record of recklessness or a criminal or violent background, or a complete failure to train rather than a limited, specific failure to train. In Plaintiff's *Opposition*, Plaintiff did not argue why this exception should apply to his case.

Further, the Court finds that Plaintiff's conclusory allegations of a policy or "institutionalized" practice "effectively amount[s] to a formulaic recitation of the elements of [his] 42 U.S.C. § 1983 cause of action."[70] As explained by the Fifth Circuit, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; *it must contain specific facts.*"[71]

Accordingly, because Plaintiff has made no factual allegations to support a claim as to the existence of any actual policy or custom that Sheriff Ard fails to train and supervise his employees in deliberate indifference to the constitutional rights of others, and he has made no factual allegations sufficient to show a widespread pattern or practice of same, Plaintiff's claims against Sheriff Ard in his official capacity must be dismissed.

<u>Sheriff Ard - Individual Capacity Claims</u>

Plaintiff has claimed generally that Sheriff Ard failed to properly supervise and discipline his employees and authorized, condoned, and ratified the misconduct of his employees. Sheriff Ard moves to dismiss the individual capacity claims brought against him, arguing Plaintiff has failed to allege any specific conduct or personal involvement by

---

[70] *See Norton*, 2013 WL 5519400 at *5 (citing *Twombly*, 550 U.S. at 555).
[71] *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997)(emphasis added)(citing *Fraire*, 957 F.2d at 1278.
47915

him that gives rise to a constitutional violation. Sheriff Ard argues Plaintiff has made no allegations that he was personally involved in any of the specific incidents complained of during the booking process or his medical treatment; thus, Plaintiff has failed to state a claim against him in his individual capacity. Further, Sheriff Ard argues that Plaintiff's *Complaint* consists of nothing more than conclusory allegations that he is liable for his "authorization, condonation, and ratification of the conduct of his deputies, as well as the failure to supervise his deputies."[72] Sheriff Ard also asserts the defense of qualified immunity.

In opposition to Sheriff's Ard's assertion of the qualified immunity defense, Plaintiff claims that Sheriff Ard "bears the burden of showing no genuine issue of material fact exist [sic] for trial."[73] Plaintiff incorrectly applies the summary judgment standard rather than the Rule 12(b)(6) standard applicable to this motion. While Plaintiff does acknowledge that, once a defendant asserts the defense of qualified immunity, the burden shifts to a plaintiff to rebut it, Plaintiff simply quotes boiler plate law on the standard for supervisory liability and then again argues that the Court should deny Sheriff Ard's motion to dismiss on a summary judgment standard: "The court should not dismiss the case based on qualified immunity because a jury should decided [sic] whether after looking at the facts whether [sic] Sheriff Ard is liable under supervisory liability because, strong facts suggest that they [sic] are."[74] The problem with Plaintiff's argument is that no facts have been pled that suggest personal involvement by Sheriff Ard or that address or overcome Sheriff Ard's assertion of qualified immunity.

---

[72] Rec. Doc. No. 14-1 at 4.
[73] Rec. Doc. No. 22 at 3.
[74] *Id.* at 5.
47915

The Fifth Circuit has held that, in a claim asserted under Section 1983, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[75] Plaintiff has not alleged that Sheriff Ard was personally involved in any of the incidents that allegedly caused Plaintiff's injuries, and he has not alleged that Sheriff Ard was personally involved in any of Plaintiff's medical treatment decisions. As to qualified immunity, the Fifth Circuit has also held that it is appropriate to decide the issue on a motion to dismiss, and it is not necessary to wait to submit the issue to a jury.[76]

Qualified Immunity

In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[77] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[78]

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[79] As stated by the Fifth Circuit in the context of a motion for summary judgment:

---

[75] *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999)).
[76] *See Waganfeald v. Gusman*, 674 F.3d 475, 483-84 (5th Cir. 2012)(stating that qualified immunity should be adjudicated at the earliest possible stage).
[77] 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
[78] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).
[79] 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).
47915

First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir.2002) (*en banc*); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g., Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").[80]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[81]   The plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[82]   When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[83] "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[84]

---

[80] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

[81] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).

[82] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).

[83] *Id.* at 1433–34.

[84] *Id.*

47915

Plaintiff has alleged that Sheriff Ard failed to properly supervise and train his employees and that he tolerated, condoned, authorized, and ratified both the misconduct of his employees and ostensibly substandard medical treatment to those in his custody. The law requires that the constitutional violations alleged under Section 1983 must be specified by the plaintiff and must rest on "more than conclusions alone."[85]  A plaintiff "must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference - not the result of mere negligence."[86]

Plaintiff has failed to plead facts to support any personal involvement on the part of Sheriff Ard, any causal connection to the alleged incidents, or any factual basis for the claim that Sheriff Ard failed to supervise or train his employees.  As such, Plaintiff has not alleged that Sheriff Ard committed a constitutional violation under current law; thus, Plaintiff's claims fail the first prong of the two-part qualified immunity test. Accordingly, the Court need not determine whether Sheriff Ard's actions were objectively unreasonable. Therefore, Plaintiff's individual capacity claims against Sheriff Ard must be dismissed.

However, as set forth above in *Schultea v. Wood*, "this two-step process-requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7(a) is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity."[87]   Indeed,

> [t]here has to be more underlying a complaint than a hope that events happened in a certain way. Instead, in the "short and plain" claim against a public official, "a plaintiff must at least chart a factual path to the defeat of the defendant's immunity, free of conclusion." *Schultea*, 47 F.3d at 1430. Once that path has been charted with something more than conclusory

---

[85] *Schultea v. Wood*, 47 F.3d at 1433.
[86] *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996)(internal citations omitted).
[87] *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995).
47915

statements, limited discovery might be allowed to fill in the remaining detail necessary to comply with *Schultea*. [88]

Therefore, in accordance with *Schultea*, and because the Court has not previously granted Plaintiff leave to amend, the Court will allow Plaintiff leave to amend within twenty-one (21) days from the date of this ruling and to file a response that complies with Rule 7(a).

### D. Warden Rushing's *Motion to Dismiss* – Federal Claims

<u>Allegations Against Warden Rushing</u>

Plaintiff asserts claims against Defendant Warden Rushing in two paragraphs of the *Complaint*:

> Defendant, WARDEN PERRY RUSHING (WARDEN), is sued in his/her individual capacity and also in his official capacity as the Warden of the Livingston Parish Sheriff's Office/Livingston Parish Detention Center. … On information and belief, Warden, was endowed with responsibility regarding the provision of security to persons in the custody of the Livingston Parish Sheriff's Office and was charged with responsibility to ensure that all prisoners under his/her jurisdiction were protected. Defendant Warden is responsible for the policies, practices, and customs of the Livingston Parish Sheriff's Office, as well as the hiring, training, control, supervision, and discipline of its correction officers and other personnel.[89]

> \*\*\*

> The acts, omissions, conduct and behavior of the Livingston Parish Sheriff's Office, through … Warden Perry Rushing … constitutes a violation of the constitutional and statutory duties imposed upon them under the law of the State of Louisiana and under the Louisiana Constitution 1974.[90]

There is an allegation made against a "Warden Doe" in Paragraph 24 of the *Complaint*:

> On information and belief, the abuse to which complainant was subjected was consistent with an institutionalized practice of the Livingston Parish Sheriff's Office and the Livingston Parish Detention Center, which was

---

[88] *Floyd v. City of Kenner*, 351 Fed. Appx. 890, 898 (5th Cir. 2009).
[89] Rec. Doc. No. 1, ¶ 9.
[90] *Id.* at ¶ 34.
47915

known to and ratified by defendant Sheriff Ard and Warden Doe, the defendants having at no time taken any effective action to prevent persons in their custody and police personnel from continuing to engage in such misconduct.[91]

<u>Warden Rushing - Official Capacity Claims</u>

Plaintiff claims he has sued Warden Rushing under Section 1983 in his official and individual capacities; however, Plaintiff has not alleged that Warden Rushing is a policymaker or that he is vested with final policymaking authority under Louisiana law. Moreover, this Court has already held as a matter of law that Warden Rushing is not a policymaker for the Livingston Parish Sheriff's Office; thus, he cannot be sued in his official capacity.

In *Brewer v. Ard*, Warden Rushing was sued in his official capacity, along with Sheriff Ard, as Warden of the Livingston Parish Detention Center.[92] This Court noted that "there are no factual allegations suggesting that this position made Major Rushing a policymaker for the Livingston Parish Sheriff's Office."[93] Explaining the plaintiff's misplaced reliance on *Pembaur v. City of Cincinnati*,[94] the Court stated: "Major Rushing may have had decision-making authority as the Warden, but that does not grant him the authority to establish policies within the Livingston Parish Sheriff's Office."[95]

Accordingly, the official capacity claims against Warden Rushing are dismissed as a matter of law with prejudice because amendment would be futile.

---

[91] *Id.* at ¶ 24.
[92] No. 14–414–JJB–SCR, 2015 WL 222326 at *2 (M.D. La. Jan. 14, 2015).
[93] *Id.*
[94] 475 U.S. 469, 483 n. 12 (1986).
[95] *Brewer*, 2015 WL 222326 at *2.
47915

<u>Warden Rushing - Individual Capacity Claims</u>

Warden Rushing moves to dismiss the individual capacity claims brought against him under Section 1983 arguing that Plaintiff has failed to plead any factual allegations that he was specifically personally involved in any of the incidents of which Plaintiff complains.  Warden Rushing also asserts the defense of qualified immunity for any individual claims asserted against him.

The Court notes that Warden Rushing's name only appears three times in the entire *Complaint*:  in the caption, in Paragraph 10 where the Parties are identified, and Paragraph 34 wherein Plaintiff claims that the "actions, omissions, conduct, and behavior" of Warden Rushing is in violation of the constitution and statutes of Louisiana.  A "Warden Doe" is referenced in Paragraph 24 and is alleged to have ratified the institutionalized practice of never taking effective action to prevent employees from engaging in misconduct as set forth above.

Plaintiff opposes this motion and repeats the same erroneous standard regarding qualified immunity at the Rule 12(b)(6) stage, arguing that the Court should allow a jury to decide genuinely disputed issues of fact. Notwithstanding this argument, Plaintiff's arguments in opposition cannot save his failure to plead any facts to support individual capacity Section 1983 claims against Warden Rushing.  First, arguments of counsel in a brief are not a substitute for properly pleaded allegations, and "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[96]  Second,

---

[96] *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing.
47915

and more importantly, the statements in Plaintiff's *Opposition* only serve to highlight the facts missing in Plaintiff's *Complaint.*

For example, Plaintiff states:

> Circumstances do suggest that the defendant Warden Rushing had been exposed to the information concerning the obvious risk of officers Eric Lockhart, Jacob McKnight, and Trey Roberts in regards to prisoner safety and Warden Perry Rushing knew or should have known about it. Warden Rushing failed to train and supervise these officers after numerous complaints for abuse of power.[97]

What circumstances suggest that Warden Rushing was exposed to this information? How obvious was the alleged risk, and upon what factual basis does Plaintiff conclude it was obvious? What is the factual basis for the allegation that Rushing failed to train and supervise these specific officers? What facts support the allegation of "numerous complaints of abuse of power"? Upon what underlying facts does Plaintiff base his claim that Warden Rushing had specific knowledge of "numerous" complaints against these specific officers? What specific facts constitute the alleged abuse of power? These are the factual allegations necessary to support the claims Plaintiff should have included in his *Complaint* that he now asserts for the first time in his *Opposition.*

Plaintiff also contends that Warden Rushing:

> knew that these officers committed an error in supervisory actions and attempted to cover up these transgressions instead of addressing them and Mr. Rushing's decision not to further train the aforementioned officers or have them supervised caused the injury to Mr. Mocsary. *id at 464.* By Warden Rushing's making a policy judgment to not properly train his officers could lead a reasonable person and a jury to conclude that the decision not to supervise or to train officers Eric Lockhart, Jacob McKnight, and Trey

---

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).

[97] Rec. Doc. No. 30 at 8.

47915

Roberts made Warden Rushing culpable for the constitutional injuries that followed. ***id at 464***[.][98]

What factual basis or proof does Plaintiff have to allege that Warden Rushing attempted to cover up anything? If Plaintiff has factual support for these claims, why were they not alleged in the *Complaint*? Why has Plaintiff not moved for leave to amend?

The Court finds that Plaintiff has failed to state a claim against Warden Rushing in his individual capacity under Section 1983. The Court will not reiterate the analysis and reasoning set forth previously discussing the individual capacity claims against Sheriff Ard, but that reasoning and analysis applies with equal force as to Warden Rushing. However, the Court notes that the allegations asserted against Warden Rushing are far more lacking than those asserted against Sheriff Ard. Warden Rushing's *Motion to Dismiss* the Section 1983 individual capacity claims is granted, and Plaintiff will be given 21 days leave to amend and file a Rule 7(a) response to Warden Rushing's assertion of the qualified immunity defense.

### E. Deputy Defendants' *Motions to Dismiss* - Federal Claims

<u>Official Capacity Claims Against Deputy Defendants</u>

Plaintiff states that he is bringing Section 1983 claims for constitutional violations against Deputies Lockhart, McKnight, and Roberts in their individual and official

---

[98] *Id.* at 9. The Court is troubled by Plaintiff's continuous citations to *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000) as he narrates his version of the Defendants' actions relating to the events allegedly causing his injuries. Plaintiff does not cite to corresponding allegations in his *Complaint* because they are not pled. Further, the Court notes that this is a highly inappropriate case comparison considering that most courts are quick to distinguish *Brown v. Bryan County* by noting that the finding of liability in that case stemmed from the particularly egregious facts. *See Maise v. LeBlanc*, No. 17-2629, 2017 WL 9772310 at *3 (E.D. La. Sep. 1, 2017)(citing *Stepney v. City of Columbia*, 695 F. Supp. 2d 412 (S.D. Miss. 2010)). No such facts have been alleged in this case, and it is inappropriate and misleading for Plaintiff to cite to *Brown* after each statement of the present Defendants' alleged conduct to suggest that the conduct of the defendants in *Brown* is analogous.
47915

capacities.  However, Plaintiff has not alleged that any of these deputies are policymakers for Livingston Parish or that they have been delegated with final policymaking authority. Accordingly, all Section 1983 official capacity claims against these Defendants are dismissed with prejudice as amendment is futile.[99]

<u>Individual Capacity Claims Against Deputy Defendants</u>

<u>Trey Roberts</u>

Other than naming Trey Roberts as a Defendant, listing him in the caption, and lumping him into non-specific allegations with all other Defendants in Paragraph 34, there is not a single specific allegation made against Roberts.  Not one allegation in the *Complaint* connects Roberts to Plaintiff's injuries from the initial transport of Plaintiff to booking, to the incident in the decontamination room, to the medical treatment he received on several occasions at LKMC and/or University Hospital.  Accordingly, all federal claims against Roberts are dismissed with prejudice for failure to state a claim.

<u>Defendants Lockhart and McKnight</u>

In order "to state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable."[100]  Plaintiff alleges that McKnight and Lockhart removed him from McKnight's vehicle and dragged him, face down, to the LPDC booking area causing him unbearable agony in both shoulders.[101]  He also alleges that, on February 21, 2017,

---

[99] *See Elphage v. Gautreaux*, 969 F.Supp.2d 493, 512 (M.D. La. 2013)(citing *Club Retro, L.L.C. v. Hilton*, No. 07–193, 2008 WL 1901723, at *7 (W.D. La. Apr. 4, 2008), *rev'd in part on other grounds*, 568 F.3d 181 (5th Cir.2009)).
[100] *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008).
[101] Rec. Doc. 1 at 5.
47915

Plaintiff was diagnosed with a broken shoulder, subsequently received an MRI, and the MRI offered a limited diagnosis of four major tears and a rupture.[102]

McKnight and Lockhart move to dismiss the excessive force claims arguing that Plaintiff has failed to plead facts that would demonstrate that the officers' conduct was not objectively reasonable in light of the facts and circumstances confronting them, which is Plaintiff's burden considering that they have asserted a qualified immunity defense.

The Court finds that Plaintiff has adequately stated a plausible claim for excessive force; however, Plaintiff must file a Rule 7(a) response to address the Defendants' assertion of the qualified immunity defense.  It is true that nothing in the *Complaint* establishes Plaintiff's level of resistance.  There are no facts before the Court as to the reason for the Plaintiff's arrest, although Plaintiff admits to his intoxication.  Both Plaintiff's level of resistance and any threat he may have posed to the officers' safety is relevant to the analysis of what level of force may have been required under the circumstances.[103] These facts would also directly address the objective reasonableness of the officers' actions and aid the Court in determining whether the officers are entitled to qualified immunity.  Accordingly, the *Motions to Dismiss* Plaintiff's excessive force claims by Defendants Lockhart and McKnight are DENIED; however, Plaintiff is ordered to file a Rule 7(a) response to the Defendants' assertion of the qualified immunity defense within twenty-one (21) days.

---

[102] *Id.*
[103] *See Bros. v. Zoss*, 837 F.3d 513, 518–19 (5th Cir. 2016).
47915

## F. State Law Claims

Plaintiff asserted Louisiana constitutional and state law claims of IIED, failure to protect, and negligent supervision against all Defendants, and all Defendants moved for dismissal of the state law claims. Plaintiff utterly failed to mention any of the state law claims in either of his *Opposition* memoranda. Accordingly, the state law claims are deemed abandoned,[104] Defendants' *Motions to Dismiss* are granted on all state law claims, and the state law claims are dismissed with prejudice.

## IV.    AMENDMENT

Plaintiff requested leave to amend his complaint should the Court find that the current alleged facts fail to state a claim.[105] Several times above, the Court noted that it allow Plaintiff to amend for certain claims within twenty-one days. That is because the Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires."[106] Moreover, "courts should ordinarily grant a plaintiff **at least one** opportunity to amend before dismissing a complaint with prejudice for failure to state a claim.[107] Where the Court found that amendment is futile, or Plaintiff abandoned his claims, amendment will not be allowed.

---

[104] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).
[105] Rec. Doc. No. 30 at 11.
[106] Fed. R. Civ. P. 15(a)(2).
[107] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000))(emphasis added).
47915

## V. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[108] Plaintiff's federal claims by Defendant, Sheriff Jason Ard, is GRANTED, and Plaintiff's federal claims against Sheriff Ard are dismissed without prejudice. Plaintiff's state law claims against Sheriff Ard are dismissed with prejudice.

Warden Rushing's *Motion to Dismiss*[109] is GRANTED, and Plaintiff's federal official capacity claims against Warden Rushing are dismissed with prejudice. Plaintiff's individual capacity claims against Warden Rushing are dismissed without prejudice. Plaintiff's state law claims against Warden Rushing are dismissed with prejudice.

Defendant Trey Roberts' *Motion to Dismiss*[110] is GRANTED, and all claims against Trey Roberts are dismissed with prejudice.

The *Motions to Dismiss*[111] by Defendants Lockhart and McKnight are GRANTED in part and DENIED in part. The official capacity Section 1983 claims against Lockhart and McKnight are dismissed with prejudice. The *Motions to Dismiss*[112] is DENIED as to the individual capacity Section 1983 excessive force claims brought against Lockhart and McKnight. All state law claims against Lockhart and McKnight are dismissed with prejudice.

Plaintiff shall have twenty-one (21) days from the date of this *Ruling* to amend his *Complaint* to cure the deficiencies set forth herein as to any claim that were dismissed without prejudice. Plaintiff shall also have (21) days from the date of this *Ruling* to file a

---

[108] Rec. Doc. No. 14.
[109] Rec. Doc. No. 15.
[110] Rec. Doc. No. 15.
[111] Rec. Doc. No. 15.
[112] Rec. Doc. No. 15.
47915

Rule 7(a) response to all Defendants' assertions of the qualified immunity defense. Plaintiff's failure to amend his *Complaint* and/or file a Rule 7(a) response within the given deadline will convert all dismissals herein to "with prejudice."

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 25, 2018</u>.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**